IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Diamond Power International, Inc.,

      Plaintiff,

  v.

Wayne Davidson and
Clyde Bergemann, Inc.,

      Defendants.

CIVIL ACTION NO.
1:04-CV-0091-RWS

---

**DEFENDANT CLYDE BERGEMANN, INC.'S REPLY IN SUPPORT OF
ITS MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S
EXPERT TESTIMONY OF PHILIP RATLIFF**

---

Diamond Power's Response is a smokescreen[1] that fails to mask the fatal

flaw in Ratliff's testimony: his inability or failure to allocate damages between

legal and actionable conduct.  This case is *indistinguishable* from *Optimum Tech*

and its predecessors and, accordingly, it is error to allow Ratliff to testify regarding

causation.  Without his legally flawed causation testimony, Ratliff is left crunching

Bergemann's financials, a job for which no expert is needed.

---

[1] Diamond Power spends *over one third* of its Response setting forth what
evidence of causation it believes it has *other than* Ratliff's testimony.  (*See*
Response 1-10.)  In so doing, Diamond Power effectively concedes that *Ratliff*
cannot be an expert on causation.

I.      **Ratliff's Testimony Does Not Assist Trier of Fact**

    A.      **Although designated as an expert to determine the cause of damages, if any, Ratliff's opinions provide no such insight**

        i.      **Ratliff's failure or inability to allocate damages is fatal**

In its Response, Diamond Power makes the remarkable assertion that "no portion of [Ratliff's] damages theory, causation or quantification, relies on dismissed claims." (Response, 12).   Its assertion is untrue.  Ratliff's causation and damages theory explicitly relies on information and conduct no longer at issue against Bergemann, i.e., information that *as a matter of law* Bergemann did not "misappropriate."

More specifically, Ratliff explained that, "beginning on or around October 31, 2003, [Bergemann] misappropriated [] proprietary information created and maintained by Diamond Power."  (Report, ¶3.3).  This "information misappropriated by Bergemann" "includes but it not limited to documents and information identified in Exhibit 1."  (Report, ¶3.4).  Exhibit 1 to Ratliff's expert report lists the following items that either Diamond Power has conceded, or the Court has ruled, *are no longer actionable against Bergemann*:

    \*\*
    Diamond Hardware Book.xls
    \*\*

NPER-EAPC poppet valve.pdf
NPER_0303_IR3z.pdf
**
Diamond Power Parts Identification for library and index
Diamond Power welding instructions
Diamond Power PI Configurator
Parts comparison.doc
Specific customer pricing data

(Report, Ex. 1).  Indeed, Ratliff went so far as to state that the above documents --

*no longer at issue in this case* – are "internal to Diamond Power and could not

have been legitimately obtained (in its entirety, as accurately and while still

relevant to market conditions) by any competitor in the normal course of business."

(Report ¶ 3.7).

When given an opportunity to parse out purported damages to any particular

document on Exhibit 1, Ratliff refused to do so.  Instead, Ratliff testified in his

deposition as follows:

> **Q:     . . .  Can you link any of the damages that you**
> **conclude were the result of the alleged**
> **misappropriation to any particular document**
> **listed in Exhibit Number 1?**
> *
> **A:     No. Not that I'm aware of.**

(Ratliff Dep. 1, 106).

Ratliff further testified:

> **Q:     If a portion of these documents were found not**
> **to be proprietary information, would this**

3

> **reduce the amount of damages that you**
> **conclude in your report are attributable to the**
> **misappropriation of proprietary information?**
> **\* \* \***
> **A:    There's no way of knowing . . .**

(Ratliff Dep.1, 108).  Ratliff ultimately made his "[c]onclusion on Causation": "it

is my opinion that Bergemann's misappropriation of Diamond Power proprietary

information has enabled Bergemann to realize increased revenue and profits from

sales of its DPAM products and services and has caused a loss of revenues and

profits to Diamond Power."  (Report, ¶4.15).

Because Ratliff's theory of damages relies upon documents ***the majority of***

***which were not misappropriated by Bergemann***, his causation and damages

theories based on his now confirmed to be inaccurate assumptions necessarily must

be excluded.  *See Ferguson v. Bombardier Servs. Corp.,* No. 05-14781, 2007

U.S.App. LEXIS 17849, *9-10 (11th Cir. July 26, 2007) (district court properly

excluded expert whose testimony was predicated on assumption that was belied by

the evidence); *Orrin v. Walt Disney Co.*, 475 F.3d 1239, 1251 (11th Cir. 2007) (in

copyright case, report of expert relying upon scenes not copyrighted excludable).

Diamond Power's argument that an expert -- designated for the express

purpose of causation and damages -- does not have to parse out lawful activities

from a damages calculation is befuddling in light of overwhelming precedent to the

contrary. *See, e.g., Optimum Tech., Inc. v. Henkel Consumer Adhesives, Inc.,* No. 1:04-CV-1082-TWT, 2006 U.S.Dist. LEXIS 42891 at *13-17 (N.D. Ga. June 14, 2006), *affirmed,* 496 F.3d 1231 (11th Cir. 2007) ("inability or failure to allocate damages between legal and actionable conduct highlights the fact that [his] testimony would not assist the trier of fact.")

The similarities of *Optimum Tech* and the instant case are uncanny.  In *Optimum Tech,* the plaintiff, Optimum, asserted claims of trademark infringement, trade dress infringement, unfair competition, deceptive trade practices, breach of confidential relationship, breach of fiduciary duty, fraud, fraudulent concealment, and negligent misrepresentation. *Id* at *3.  In support of its claim for damages, Optimum presented expert testimony.  Thereafter, the *Optimum Tech* Court granted summary judgment on all but three of Optimum's claims.

Prior to trial, the defendant, Henkel, moved *in limine* to exclude the opinions and testimony of Optimum's expert because they were grounded on the existence of claims that had been dismissed prior to trial.  The Court originally denied the *in limine* motion without discussion and then, again, at trial.  *Optimum*, 2006 U.S. Dist. LEXIS 42891, at *9.  On Henkel's subsequent motion for judgment as a matter of law after trial, the Court determined that the expert's testimony was not warrant under the *Daubert* standards. *Id.*

5

After reviewing the standard of admissibility of expert testimony under

Fed.R.Evid. 702 and *Daubert*, the Court reasoned:

> It is apparent from his testimony that [the expert] based his damages analysis and opinions to a large degree on the existence of claims that had been dismissed prior to trial . . . . However, as noted above, the Court dismissed the majority of Optimum's claims at summary judgment, the only claims remaining being those for trademark infringement and unfair competition . . . . Nevertheless, [the expert's] report and trial testimony concluded that ***all of the alleged violations, taken together and without regard to whether the claims had been dismissed***, were the cause of Optimum's damages.

*Id.* at *13-14.  The Court acknowledged the expert's admitted inability to

"reliably separate out how much of the damage was from the confusion-type

charges, like infringement-related charges, versus how much were from

unfair competition and other acts."  *Id.* at *15.   It then held that "[t]he

inability or failure to allocate damages between legal and actionable conduct

highlights the fact that [the expert's] testimony would not assist the trier of

fact."  *Id.* at *16 (citing *Williamson Oil Co., Inc. v. Phillip Morris USA*, 346

F.3d 1287, 1323 (11th Cir. 2003)).  Finally, it concluded:

> "[b]ecause [the expert] ***based his testimony on excluded facts and claims***, there is too great an analytical gap between the relevant facts and his opinions as to damages.  As such, his testimony lacks the 'fit' required for admissibility under *Daubert* and is properly excluded.

*Id.* at 17 (emphasis supplied).  In a lengthy decision, the Eleventh Circuit affirmed

the Court's ruling.  *Optimum Tech*, 496 F.3d at 1252.

Here, the facts and circumstances are virtually indistinguishable from, and more compelling than, those in *Optimum Tech.*  Diamond Power brought claims for (1) misappropriation of trade secrets, (2) violation of the Computer Fraud and Abuse Act, (3) conversion, (4) unjust enrichment, (5) tortious interference with business relations, and (6) tortious interference with contractual relations.  The Court awarded Bergemann complete summary judgment Diamond's claims (2)-(6) and awarded Bergemann partial summary judgment on Diamond's trade secret claims.  In so doing, the Court dismissed the majority of "misappropriated information" identified on Ratliff's Exhibit 1.

Like the *Optimum Tech* expert, Ratliff's causation opinion of damages is premised on facts and issues no longer before the court.  Like the *Optimum Tech* expert, Ratliff opines that Diamond Power's damages are caused by "misappropriated information" in the aggregate and not "any particular document".[2]  And, like the *Optimum Tech* expert, Ratliff's causation and damages opinion is based on the existence of facts and claims no longer before the Court, is simply not relevant, and fails to meet the standards of *Daubert.  Id* at *9, 14.

---

[2] Ratliff's failures are more egregious than those of the plaintiff in *Optimum Tech*.  Unlike the expert in *Optimum Tech* who contended that he formed his opinions during the early states of litigation, Ratliff had the benefit of *years* of discovery before rendering his expert opinion.  (*See* Brief, 13-20).

Therefore, Ratliff's testimony must be excluded. *Id* at *16-17. *See also*

*Williamson Oil Co.,* 346 F.3d at 1323 ("[Expert] did not differentiate between legal

and illegal pricing behavior, and instead simply grouped both of these phenomena

under the umbrella of illegal, collusive price fixing. This testimony could not have

aided the trier of fact to determine whether appellees' behavior was or was not

legal, and the district court properly excluded it [under Daubert]."); *Computer*

*Access Tech. Corp.,* 275 F. Supp.2d at 1076 (damages not proved with reasonable

certainty, and therefore not recoverable, where plaintiff failed to distinguish

between damages caused by trademark infringement as opposed to lawful

conduct).

### ii.    Causation cannot be assumed

Diamond Power's contention, that Ratliff may rely upon "testimony from

other witnesses in formulating his causation theory" (Response, p. 15), while true,

is irrelevant to whether *Ratliff's* opinions and testimony must be excluded.

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.,* 432 F. Supp. 2d 1319 (S.D. Fla.

2006), cited by Diamond Power for that proposition, actually underscores the fact

that Ratliff's opinions are not validly connected to the remaining disputed facts in

the case:

> "[f]or [the expert's] opinions to be of any use, [the company] was
> required to offer sufficient proof of the assumptions that [the expert]

accepted as the foundation for his opinion, most importantly -- that [the company's] injury was caused by [the defendant's] conduct. Only upon such a showing could [the company] proceed to the next prong of its lost profit analysis and offer [the expert's] opinion to provide the jury with a non-speculative estimation of the amount of [the company's] injury."

*Id.* at 1350.

Here, the *exclusive* facts on which Ratliff relies -- as reported to him by Diamond Power's counsel and employees -- to opine on causation and damages are the "misappropriation" of documents and information listed in Exhibit 1 of Ratliff's Report.  The majority of the Exhibit 1 documents can no longer form the basis of Diamond Power's remaining claim of misappropriation.  Accordingly, Ratliff's opinion *cannot* be "of any use" because Diamond Power has failed, as a matter of fact and law, "to offer sufficient proof of the assumptions that [Ratliff] accepted as the foundation for his opinion."  *Alphamed Pharms*, 432 F. Supp.2d at 1350.

As Diamond Power's identified expert on **causation and damages**, Ratliff cannot just assume[3] those elements, as he has done in this case.[4]  Because it would

---

[3] Although Diamond Power asserts in its response that experts can have "flexible and imaginative approach[es]", (*see* Response, 14), there is no law or logic to support a contention that an approach to damages – regardless of how "imaginative" – meets the standards of *Daubert* if it is based substantially on facts and issues no longer before the Court.

be error for Ratliff to provide testimony on the issue of causation[5], Ratliff's

testimony must be excluded.[6]

---

[4] Ratliff's complete failure to establish causation (one of the areas for which he was designated as an expert) is not "virtually identical" to the situation presented in *Brandenburg v. All-Fleet Refinishing, Inc.*, 555 S.E.2d 508 (Ga. App. 2001). *Brandenburg* was a default judgment case where, as a matter of law, *liability and causation were assumed. Id.* at 510. The only issue for trial was damages. Thus, the *Brandenburg* expert necessarily assumed causation and liability.

[5] Diamond Power also argues that the instant case is distinguishable from *Saks Fifth Avenue v. James, Ltd.*, 272 Va. 177 (June 2006), because the expert in *Saks* ostensibly presented the only evidence on causation. In *Saks*, the Court emphasized that the plaintiff bore the burden of showing "a causal connection between the defendant's wrongful conduct and the damages asserted." *Saks*, 272 Va. at 189. As explained above, Ratliff can no longer opine on causation, given that the majority of the underlying facts on which he premised causation are no longer at issue. Accordingly, Diamond Power must prove causation and damages independent of Ratliff's testimony. *See also Taylor Publ'g. Co. v. Jostens, Inc.*, 216 F.3d 465, 487 (5th Cir. 2000) ("Taylor offered evidence that Jostens acquired confidential information [from Taylor's former employees] and that, during a similar time frame, Jostens's market share increased and Taylor lost customers. However, absent was any evidence to prove that Taylor's losses or Jostens's gains were caused by Jostens's acquisition of confidential information. Taylor argues that the law recognizes a sort of *res ipsa loquitur* for breach of fiduciary cases in that if a breach and damage are proven, causation is assumed. However, all the cases cited by Taylor reject this proposition, expressly recognizing the need to prove causation before a flexible approach to damages is relevant.")

[6] Although designated to discuss causation, Ratliff does nothing more than serve as an accountant who has engaged in the act of number crunching to fabricate damages without any concern for whether Bergemann's actions caused those damages. As observed in Bergmann's initial brief, that is not the type of activity for which expert testimony is needed as the average lay person such as a juror is just as capable of simply adding up numbers presented by Diamond Power

**B.     Ratliff's deficiencies cannot be cured at trial**

Diamond Power contends that Ratliff's testimony can be "explain[ed]" at trial.  (Response, 12).  It cannot.  First, Ratliff testified that, unless *additional* information was produced in the litigation that he needed to consider, he would not change his expert opinion and testimony.  (Ratliff dep., p. 56).  Second, Ratliff unequivocally testified that he *could not* link damages to any particular document on Exhibit 1.  (Ratliff dep., p. 106).  Ratliff cannot circumvent his expert testimony and render a new opinion.  *See* F.R.E. 26(a)(2)(B) (expert report must contain "a complete statement of all opinions the [expert] witness will express and the basis and the reasons for them").

Third, unlike a situation in which new evidence may later be discovered and a revised expert opinion may be warranted, that is not the situation presented here where Ratliff rendered his opinion after years of discovery.[7]  In fact, Ratliff testified that <u>even if he were to consider all relevant evidence,</u> "it wouldn't change [his] opinion."  (Ratliff Dep. 1, 79).  As another court has explained:

---

without regard to causation.  *See* Fed. R. Evid. 702 (experts must "assist the trier of fact to understand the evidence or to determine a fact in issue")

[7] Ratliff also stated in his expert report that he did not intend to "supplement his opinions unless "additional information" was presented to him.  (Report ¶ 1.6).

> A supplemental expert report that states additional opinions or
> rationales or seeks to "strengthen" or "deepen" opinions expressed
> in the original expert report exceeds the bounds of permissible
> supplementation and is subject to exclusion under Rule 37(c)(1).
> To rule otherwise would create a system where preliminary [expert]
> reports could be followed by supplementary reports and there
> would be no finality to expert reports, as each side, in order to
> buttress its case or position, could "supplement" existing reports
> and modify opinions previously given.  This result would be the
> antithesis of the full expert disclosure requirements stated in Rule
> 26(a).

*Palmer v. Asarco, Inc.*, No. 03-CV-0498-CVE-PJC, 2007 U.S. Dist. LEXIS 56969

at *15 (N.D. Ok. 2007) (citing *Cook v. Rockwell Int'l Corp.* No. 90-CV-00181-

JLK, 2006 U.S. Dist. LEXIS 89121(D. Colo. Dec. 7, 2006).

## II.    Conclusion

For the reasons articulated above and in its initial brief, Defendant Clyde

Bergemann, Inc. requests that this Court exclude the testimony and opinions of

Philip Ratliff or any reference thereto during the trial of this matter.


## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel of Defendant Clyde

Bergemann, Inc. certify that this document has been prepared in Times New

Roman, 14-point font, which is one of the fonts and point selections approved by

the Court in Local Rule 5.1(B).

Dated this 1st day of February, 2008.


                        s/Jeffrey D. Mokotoff
                        John L. Monroe
                        jmonroe@fordharrison.com
                        Georgia Bar No. 516190
                        Jeffrey D. Mokotoff
                        jmokotoff@fordharrison.com
                        Georgia Bar No. 515472
                        Leanne C. Mehrman
                        lmehrman@fordharrison.com
                        Georgia Bar No. 312910

FORD & HARRISON LLP
1275 Peachtree Street, N.E.
Suite 600
Atlanta, GA  30309
Telephone: (404) 888-3800        Attorneys for Defendant
Facsimile: (404) 888-3863         Clyde Bergemann, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Diamond Power International, Inc.,

      Plaintiff,

    v.

Wayne Davidson and
Clyde Bergemann, Inc.,

      Defendant.

CIVIL ACTION NO.
1:04-CV-0091-RWS

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 1, 2008 he

served a copy the foregoing **Defendant Clyde Bergemann, Inc.'s Reply in**

**Support of Its Motion *in Limine* to Exclude Plaintiff's Expert Testimony of**

**Philip Ratliff** with the Clerk of Court using the CM/ECF system which will

automatically send e-mail notification of such filing to the following attorneys of

record:

Warren R. Hall, Jr., Esquire
Patrick J. Flinn, Esquire
Brett E. Coburn, Esquire
Leslie E. Wood, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424

David P. Thatcher, Esquire
Chamberlain, Hrdlicka, White,
Williams & Martin
191 Peachtree Street, N.E.
9th Floor
Atlanta, GA  30303-1747

s/Jeffrey D. Mokotoff

Jeffrey D. Mokotoff
jmokotoff@fordharrison.com

Attorney for Defendant
Clyde Bergemann, Inc.

Ford & Harrison LLP
1275 Peachtree Street, N.E.
Suite 600
Atlanta, GA  30309
Telephone: (404) 888-3800
Facsimile: (404) 888-3863